**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOHN C. VAN VOORHIS,**

**Plaintiff,**

**v.** **Case No. 8:06-cv-1171-T-TBM**

**HILLSBOROUGH BOARD**
**OF COUNTY COMMISSIONERS,**

**Defendant.**
_________________________________/

**O R D E R**

THIS MATTER is before the court on **Defendant Hillsborough County's Motion for Summary Judgment** (Doc. 25) and Plaintiff's response in opposition (Doc. 27). The parties have filed affidavits, excerpts of depositions, and other documentary evidence in support of their positions. See (Docs. 26, 27, 30). Oral arguments on the motion were conducted on April 26, 2007. For the reasons set forth herein, the motion is granted.

I.

A.

Plaintiff, John C. Van Voorhis, is a resident of Lee County, Florida and a pilot over the age of fifty. Defendant, Hillsborough County Board of County Commissioners (hereinafter "Defendant" or "County"), is a political subdivision of the State of Florida. Plaintiff claims that the County discriminated against him on the basis of age by failing and/or refusing to hire him as a helicopter pilot, choosing to hire instead, a younger, less qualified person for the position.

The facts surrounding this suit are largely undisputed. The Mosquito Control Section ("Mosquito Control") of the County's Transportation Maintenance Division had a job opening for a pilot. Mosquito Control is a unit of the County's Public Works Department. Paul Vanderploog was the director of the Transportation Maintenance Division. Joel Jacobson was the manager of the Mosquito Control Section. Vanderploog was Jacobson's direct supervisor. The open pilot position was one of two such positions in Mosquito Control. Dennis Boone, the County's chief helicopter pilot, was the other pilot. Jacobson was Boone's direct supervisor. Neither Jacobson nor Vanderploog were pilots.

The Hillsborough Count Civil Service Board ("Civil Service") is an agency legally separate and distinct from the County. Civil Service is responsible for certain aspects of the County's recruiting and hiring of employees. Thus, it is responsible for preparing job classification descriptions and disseminating the same to the public, accepting and processing applications and, once the applications are complete, determining which applicants are qualified, and thereafter providing a list of qualified applicants to the County. The County in turns determines whether to interview any of the qualified applicants. At pertinent times, Gene Gardner was the director of Civil Service and Harold T. Neal worked there as well.

In 2002, Civil Service conducted two separate recruitments for the helicopter pilot position in dispute. The first recruitment period initially ran from April 8, 2002, to April 19, 2002.[1] (Doc. 27 at 15). By the testimony, this recruitment period was automatically extended indefinitely because there were less than ten qualified candidates who applied. (Docs. 27 at

---

[1]While the facts surrounding the first recruitment are pertinent to Plaintiff's claims, the discrete acts of discrimination alleged in the Amended Complaint pertain to the second recruitment period.

16, 30-2 at 10). The posted minimum qualifications for applicants included, among other things, "100 hours of agricultural spraying or dusting flight time as a first pilot." Id. Plaintiff was one of nine applicants qualified by Civil Service. According to Neal, an applicant is "qualified" when he or she meets the minimum criteria of the job and has provided the documentation to support the qualification. (Doc. 30-2 at 14). When the applications were forwarded to Mosquito Control, copies of the applicants' pilot licenses were included. (Doc. 30-2 at 5, 11). Although Civil Service does not typically forward qualifying documents to the hiring County department, in this recruitment the pilot licenses were forwarded and they included the applicant's date of birth. Id,

According to Boone, after Mosquito Control began receiving the applications of the qualified applicants from Civil Service, he heard Jacobson say that he did not want to hire an old pilot. (Doc. 26-3 at 14, 26). Linda Hangar, whose office was next door to Jacobson's office, overheard the same. (Doc. 27 at 62). Boone also testified that Jacobson commented that one of the applicants, a 65 year old, was "ready for the graveyard or something." (Doc. 26-3 at 19). No interviews were conducted during this recruitment period. According to Boone, there were no interviews because Jacobson did not want to hire an old pilot and he was waiting to hire someone he wanted. (Doc. 30-2 at 23, 42). However, by Vanderploog's account, this recruitment was unsuccessful primarily because neither the County nor Civil Service required applicants to list their turbine hours, night flying hours, low level flying hours, or hours relating to spray operations. (Doc. 26 at 6-7). Pamela Knight ("Knight"), the person eventually hired for the pilot position during the second recruitment, did not qualify for the position during the first recruitment because she did not have 100 hours in agricultural spraying or dusting flight time. (Doc. 30-2 at 8, 32, 40).

In September 2002, Jacobson discussed with Vanderploog that something needed to be done to increase and broaden the type of applications they were receiving for the helicopter pilot position. (Doc. 30-2 at 20). According to Jacobson, Boone was dissatisfied with the applications they had received and he always deferred to Boone because he was the most knowledgeable about flying. Id. That same month, Knight met with Jacobson to discuss if there was a way she could get the 100 hour requirement met.[2] According to Knight, Jacobson told her they were considering removing that criteria to expand the pilot pool and he encouraged her to keep her options open and check the web site to see if the requirements had changed. (Doc. 30-2 at 33, 36). Jacobson later suggested to Vanderploog that they might attract more applicants if they got rid of the minium hour requirement but maintained a generic low altitude flight requirement. (Doc. 27 at 54). Thereafter, Jacobson worked with Bob Chandler, a Civil Services employee in the classification department, on rewriting the minimum qualifications of the pilot position. (Doc. 27 at 57; 30-2 at 3). At the request of the County, the first recruitment period was terminated on October 11, 2002. (Doc. 26-3 at 9).

The second recruitment period initially ran from October 21, 2002, through November 1, 2002. (Doc. 27 at 18). On this posting, applicants were no longer required to have100 hours of spraying or dusting flight time as first pilot. Instead, they had to minimally demonstrate that they had experience in low level, nap of the earth, or agricultural spraying or dusting flight time as first pilot. (Doc. 27 at 18). An application supplement form was required to be completed before qualification for employment could be determined. Id. By

[2]It appears that Knight expressed interest in the position and gave her resume to Boone and that Boone, thereafter, forwarded Knight's resume to Jacobson. Jacobson responded by emailing Knight to let her know that he was impressed with her resume and request that she call him to discuss some of the requirements and possible courses of action. (Doc. 27 at 53).

the close of the initial posting, Civil Service advised Mosquito Control that there were two people on the list of qualified applicants. On November 5, 2002, Civil service forwarded Knight's application, as well as that of Fred Yocher, to Mosquito Control. (Docs. 26 at 13; 30-2 at 12). The posting was extended as of November 2, 2002, subject to being withdrawn at any time. (Doc. 27 at 17).

Knight and Yocher were interviewed on November 21, 2002. The interview panel consisted of Boone, Rebeckah Sanchez (a Public Works employee from a different division), and Jacobson. Boone and Sanchez rated both candidates' answers to interview questions; Jacobson was a non-voting interview panelist. (Doc. 26 at 23). Knight received the higher scores from both. She was offered the position that day and accepted it. (Doc. 26 at 9).

Plaintiff was certified as a qualified applicant on December 2, 2002, and his name and/or application was forwarded to Mosquito Control as such on December 9, 2002.[3] (Docs. 26 at 39, 30-2 at 12). Hangar emailed Civil Service on December 12, 2002, asking that the helicopter pilot position be removed from the open recruitment list. (Doc. 27 at 60). The recruitment closed on December 13, 2002. (Doc. 30-2 at 12). By the time the recruitment was closed, Civil Service had forwarded an eligibility list to Mosquito Control that contained the names of nine other persons who had qualified for the position. (Doc. 30-2 at 13, 14).

Knight married Jacobson almost two years after she was hired by the County.

---

[3]Plaintiff submitted his application for the second recruitment on November 20, 2002, but he was missing documents so he was not immediately certified. (Doc. 26-3 at 3, 4). Plaintiff's application during the first recruitment did not carry over to the second recruitment because the 90-day life cycle of his eligibility had elapsed. Id. at 10.

According to Neal, the second recruitment had been advertised in the usual way. By his account, Civil Service was not in the practice of personally contacting previously qualified applicants to advise them that a second recruitment has been posted. Id. at 3.

B.

By his Amended Complaint, Plaintiff alleges that the County discriminated against him on the basis of his age by hiring a younger, less qualified individual as a helicopter pilot prior to the close of the recruitment period in December 2002 even though the County had Plaintiff's application before the position was withdrawn and his qualifications exceeded those of the individual hired. He brings his claims of age discrimination pursuant to the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes, § 760, et seq. (Count I); Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, et seq. (Count II); and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 623, et seq. (Count III). Plaintiff seeks past and future earnings in connection with the loss of the position, an order permanently enjoining the Defendant from future discriminatory conduct, and attorney fees. (Doc. 11).

By its motion, the County seeks summary judgment on each count. As grounds, it contends that Plaintiff's Title VII claim at Count II fails as a matter of law because age is not a protected class under Title VII, Plaintiff's ADEA claim at Count III is barred by the Eleventh Amendment, and Plaintiff's state law claim at Count I fails because Plaintiff cannot state a prima facie case of discrimination and/or demonstrate that Defendant's reasons for not hiring him were pretextual. (Doc. 25). By his written response, Plaintiff urges the court that genuine issues of material facts exist that preclude summary judgment. He does not respond with specificity to Defendant's legal arguments regarding Counts II and III. (Doc.27).

II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. See Celotex, 477 U.S. at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. See Perkins v. Sch. Bd. of Pinellas County, 902 F. Supp. 1503 (M.D. Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. See id. at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). All the

evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

III.

A.

Defendant first argues that Count II fails as a matter of law because Title VII does not prohibit discrimination based on age. Plaintiff conceded this point at oral arguments on the motion.

Age is not a protected class under Title VII. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion, sex, or national origin*.") (emphasis added); Gen. Dynamics Land Sys., Inc. v. Cline 540 U.S. 581, 586 (2004) (noting that "Congress chose not to include age within discrimination forbidden by Title VII of the Civil Rights Act of 1964"). Thus, because an age discrimination claim is not cognizable under Title VII, Defendant's motion for summary judgment as to Count II is granted.

B.

Next, Defendant argues that Plaintiff's ADEA claim at Count III is precluded by the Eleventh Amendment. Relying on dicta in Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 90 (2000), Defendant argues that local governments are not liable under the ADEA.

The Eleventh Amendment precludes suits by citizens against their own States in federal court. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001);

Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1231 (11th Cir. 2000). For Eleventh Amendment purposes, a "state" includes certain actions against state agents and state instrumentalities. Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000). Eleventh Amendment immunity, however, does not extend to counties, municipal corporations, or other political subdivisions of the state. Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979); Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Hutton v. Strickland, 919 F.2d 1531, 1542 (11th Cir. 1990). In the context of the ADEA, however, the Supreme Court determined that although the statutory language expressly allows suits against state entities, the ADEA did not validly abrogate state entities' Eleventh Amendment immunity because the ADEA is grounded in Congress's Article I powers, not Congress's powers to enforce the Fourteenth Amendment. Kimel, 528 U.S. at 73-74.

Upon careful consideration of the argument presented, I conclude that the Eleventh Amendment does not bar Plaintiff's ADEA claim. While the argument Defendant advances is not entirely unpersuasive, Defendant provides no authority in support of its position and the court's independent research on this matter reveals none. Notably, the courts that have considered whether the ADEA remained binding on municipalities (and counties) after Kimel have concluded that it does. See Hill v. Borough of Kutztown, 455 F.3d 225, 247 n.30 (3d Cir. 2006) (recognizing the holding in Kimel but concluding that it does not follow that sovereign immunity protects political subdivisions of states from suit by individuals); Hornfeld v. City of N. Miami Beach, 107 F. Supp. 2d 1359, 1361-64 (S.D. Fla. 2000) (finding that, although the ADEA constituted incongruent and disproportionate legislation under the congruence and proportionality test for the Fourteenth Amendment, and thus did not validly

abrogate the states' Eleventh Amendment immunity, it was valid legislation under the Commerce Clause and was therefore binding upon a municipality); see also Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298, 1314 (11th Cir. 2005) (holding that Eleventh Amendment immunity did not bar federal claims against the County) (§ 1983 context). Accordingly, the County is not entitled to relief on this basis.

C.

Finally, Defendant argues that summary judgment is warranted on Plaintiff's state law age discrimination claim at Count I (and ADEA claim at Count III).[4] By its reading of the evidence, Plaintiff cannot establish a prima facie case of age discrimination because there is no evidence that the County (Jacobson and/or Vanderploog) knew Plaintiff's age and the County took no adverse action against Plaintiff because it had already hired Knight by the time Plaintiff's application was complete.

The ADEA and the FCRA prohibit employers from refusing to hire persons because of their age.[5] 29 U.S.C. § 623(a)(1); Fla. Stat. § 760.10(1)(a). A plaintiff may establish a prima facie case of age discrimination in one of three ways: direct evidence of discriminatory intent; circumstantial evidence under the Title VII framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or statistical proof. See Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). Since Plaintiff has failed to present direct

---

[4]Plaintiff's FCRA and ADEA claims are based upon the same operative facts and governed by the same standards of proof.

[5]Courts apply the same legal standard in analyzing claims under Title VII, the ADEA, and the FCRA. Byrd v. Richardson-Greenshields Secs., Inc., 552 So.2d 1099, 1102 (Fla. 1989); Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001); Duffy v. Lowe's Home Centers, Inc., 414 F. Supp. 2d 1133, 1141 n.26 (M.D. Fla. 2006).

evidence[6] or statistical proof of discrimination, the McDonnell Douglas framework applies in this instance. Under this framework, the plaintiff must: (1) initially establish a prima facie case of discrimination; (2) the employer must then respond with a legitimate, nondiscriminatory reason for its actions; and (3) to prevail, the plaintiff must establish that the employer's articulated reason was merely a pretext to mask unlawful discrimination. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).

To satisfy the initial prima facie requirement of an age discrimination case, Plaintiff must show that he was (1) a member of the protected age group of persons between the ages of forty and seventy, (2) subjected to adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir.1997)); Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653,

---

[6]Direct evidence of discrimination is "evidence, which if believed, would prove the existence of a fact [in issue] without inference or presumption." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (quoting Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989)); see also Young v. General Foods Corp., 840 F.2d 825 (11th Cir. 1988). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." Earley, 907 F.2d at 1081 (quoting Carter, 870 F.2d at 582). Here, Plaintiff argues that the statements Jacobson made in connection with the applications received during the first recruitment period about not wanting to hire an old pilot constitute direct evidence. Although the statements clearly are related to age, they do not prove, without inference, age discrimination against this Plaintiff in the particular circumstances of this case and therefore do not constitute direct evidence. See Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500-01 (11th Cir. 1991) (finding a statement by store manager to Plaintiff that "both of us had been around too long and were too old and were making too much money" ambiguous and insufficient to furnish direct evidence of discriminatory intent); Earley, 907 F.2d at 1082 (finding documents which referred to the ages or birth dates of employees related to voluntary early retirement eligibility and unrelated to specific actions taken toward plaintiffs because of plaintiffs' age). Jacobson's statement(s), however, are relevant to whether Defendant's proffered reasons for not hiring Plaintiff are pretext for age discrimination.

656-57 (11th Cir. 1998); Turlington, 135 F.3d at 1432; Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1441 (11th Cir. 1998). Although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements. Turlington, 135 F.3d at 1432.

Here, the parties do not dispute that Plaintiff was over the age of forty and qualified for the open position, or that a younger individual (Knight) was hired for the position. They do disagree, however, on whether Jacobson[7] was aware of Plaintiff's age and whether Plaintiff was subjected to an adverse employment action.

Upon consideration, I conclude that Plaintiff is unable to establish this last element of a prima facie case of age discrimination. Although a fact finder could reasonably infer and conclude that Jacobson was aware of Plaintiff's age[8] at the time the decision was made to hire Knight, and that Jacobson's machinations in changing the minimum qualification requirements for the pilot position evidenced his favoritism toward Knight, Plaintiff cannot demonstrate that he was subjected to an adverse employment action in the peculiar circumstances of the case.

---

[7]It appears agreed that Vanderploog and Jacobson jointly made the decision to hire Knight. However, I do not read Plaintiff's Amended Complaint or response to Defendant's motion as urging that Vanderploog himself discriminated against Plaintiff.

[8]It is undisputed that Civil Service forwarded Plaintiff's application to Mosquito Control during the first recruitment period. By Neal's testimony, although identifying information was removed from applications before being sent to the hiring department, in this instance the pilots' licenses were forwarded with the applications and they contained the applicant's date of birth. Moreover, in a light most favorable to the Plaintiff, after receiving the applications for the first recruitment in which all or most of the applicants were over age fifty, Jacobson is reported to have said that he did not want to hire an old pilot and that he believed one was "ready for the graveyard."

An "adverse employment action" is any ultimate employment decision, such as a discharge "or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his status as an employee." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Adverse employment actions may include refusals to hire. McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994). However, during the discrete period complained of here, i.e., the second recruitment period in the fall of 2002, the County did not take any adverse action against Plaintiff. According to Civil Service rules, Plaintiff was required to submit additional information before his eligibility for the position could be determined and his name forwarded to Mosquito Control. Thus, because Plaintiff's prior eligibility for the position had lapsed, a new or at least supplemental application was required from him so that his eligibility for the position could be redetermined. There is no dispute that as of November 21, 2002, the date on which Knight was interviewed and offered the position, Plaintiff's application was incomplete and had not been forwarded to Mosquito Control for further consideration. By the time Mosquito Control received notification from Civil Service of Plaintiff's eligibility in December 2002, Knight had already been hired.[9] While the evidence suggests that Jacobson did not wish to hire an older pilot for the open position and that the County, through Jacobson, showed favoritism in the process of hiring the younger Ms. Knight, Plaintiff cannot

---

[9]While Plaintiff suggests that Jacobson manipulated Civil Service, he does not suggest that Civil Service discriminated against him in any way or demonstrate that it permitted its normal processes to be altered or ignored on the second recruitment. Regardless of Jacobson's actions, by Civil Service rules Plaintiff's prior eligibility for the pilot position had expired and he was required to begin anew. Plaintiff does not dispute the assertion by Civil Service that his submission lacked needed information, thus delaying the decision by Civil Service on his eligibility until a point after Knight had been hired.

demonstrate that he was even on the County's radar screen at the time the decision to hire Knight was made. While Plaintiff urges that Jacobson manipulated the hiring process to permit him to hire Knight, he cannot show that Jacobson (or any other County employee) took any action to interfere with his re-application for the position. Any delay in Civil Service's determination that Plaintiff was eligible for the position appears attributable to Plaintiff rather than the County. In the given circumstances, Plaintiff simply was not in a position to be hired at the time that Knight won the position and he cannot demonstrate an essential adverse employment action at the hands of the County.

Accordingly, because Plaintiff cannot establish a prima facie case of age discrimination, the inquiry ends here. The County's motion for summary judgment is granted as to Counts I and III as well.

IV.

For the reasons set forth herein, **Defendant Hillsborough County's Motion for Summary Judgment** (Doc. 25) is **GRANTED**. The Clerk is directed to enter Judgment in favor of the Defendant and to close this case. The Judgment shall direct that each side shall bear their own fees and costs.

**Done and Ordered** in Tampa, Florida, this 9th day of May 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record